UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

RACKO PROPERTIES, INC.                        CIVIL ACTION

VERSUS                                        NO: 07-2898

ALABAMA GREAT SOUTHERN R.R.                   SECTION: "A" (5)
CO., ET AL.


                         **ORDER AND REASONS**

     Before the Court is a **Motion for Partial Summary Judgment With Motion in Limine (Rec. Doc. 49)** filed by plaintiff Racko Properties, Inc.  Defendants the Alabama Great Southern Railroad Co. and Norfolk Southern Corporation oppose the motion.  The motion, set for hearing on March 5, 2008, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is GRANTED.

I.   **BACKGROUND**

     Plaintiff Racko Properties, Inc. ("Racko") and defendants The Alabama Great Southern Railroad Co. and Norfolk Southern Corp. (referred to collectively in the singular as "Defendant" or "the Railroad") are parties to a lease that had its advent in 1956.  The lease pertains to a tract of land located near Cortez

and Conti streets in New Orleans.  The original lessee built a warehouse facility on the property.  The Railroad owns the land upon which the warehouse sits.  In 1993, Racko purchased its predecessor's interest in the warehouse for $950,000 and over the years has subleased parts of the warehouse to various tenants.  In 2016, when the lease expires, ownership of the warehouse reverts to the Railroad.

This lawsuit arises out of the Railroad's attempt to terminate the lease in early 2007.  The record contains a letter dated February 20, 2007, from the Railroad to Robert Racanelli, Racko's president.  (Rec. Doc. 36, Exh. 4).  In that letter the Railroad advised Racko of certain circumstances which it contended constituted breaches of the lease.  In particular, the Railroad complained of the warehouse being in a state of disrepair and of trash and other litter on the grounds.  (Id.). The Railroad also complained that Racko had failed to indemnify it in conjunction with a personal injury claim brought by one of the sublessees on the property.  The Railroad pointed out that Racko had never obtained its approval for the various subleases as required by the terms of the lease.  (Id.).  Finally, the Railroad now complains that Racko allowed its property insurance to lapse for a period of time.

The record contains several letters from Racko's attorney to

2

the Railroad's attorney regarding efforts by Racko to remedy the alleged breaches.  The Railroad expressed its dissatisfaction with the efforts that Racko had made.  (Rec. Doc. 36, Exh, 18).  According to Racko's counsel the Railroad was making demands that went beyond the requirements of the lease.  (Rec. Doc. 36, Exh. 19).  On March 27, 2007, the Railroad's Director of Real Estate, Steven G. Portnell, authored a letter to Racko from his Atlanta, Georgia office purporting to terminate the lease.  (Rec. Doc. 36, Exh. 1).  The letter was also delivered to Racko's subtenants, one of whom Racko contends withdrew its offer on a long term sublease because of the letter.

Racko filed this suit alleging that the Railroad's conduct violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq.  In particular, Racko contends that the March 27, 2007, letter constituted a "misrepresentation" for purposes of the LUTPA because the lease had not been terminated as of that date.  Racko also claims that the Railroad breached the duty of good faith that it owed to Racko under the lease.

Racko now moves for partial summary judgment on the issue of the Railroad's defense that it had terminated the lease as of March 27, 2007, when the termination notice was sent.  Racko contends that the lease had not been terminated because 1) the

Railroad failed to furnish the 30 days notice required under the lease before termination, and 2) the Railroad accepted rent after issuing its notice of termination.  Racko concedes that if the lease was terminated as argued by the Railroad then Racko has no claim under the LUTPA because the Railroad's March 27, 2007, termination letter would not be a "misrepresentation."  (Rec. Doc. 49, memo at 2).

## II.  DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific

4

facts" showing a genuine factual issue for trial. Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Pursuant to the original 1956 lease, in the event that the lessee fails to perform in accordance with the lease covenants, the lease provides a cure period of "thirty (30) days after written notice by the [Railroad]." (Rec. Doc. 29, Exh. A at 6). "Service of any such notice . . . shall be made by delivering a copy of the notice to the Lessee or by mailing the same to or leaving it at the last known address of the Lessee and posting in any conspicuous place upon said demised premises." (Id.). However, on April 4, 2006, the lease was amended such that

> Any notice given pursuant to the Lease shall be in writing and sent by certified mail, return receipt requested, by hand delivery or by reputable overnight courier to:
>
> . . . .
>
>     (b) Tenant: Racko Properties, Inc., Attention: President, 4545 Lawn Avenue, Western Springs, Illinois 60558, or at such other address as Tenant may designate in writing to Landlord.
>
> Any notice sent in the manner set forth above shall be

5

>     deemed delivered three (3) days after said notice is
>     deposited in the mail if sent by certified mail (return
>     receipt requested), or upon receipt if sent by hand
>     delivery or reputable overnight courier.

Rec. Doc. 60, Exh. 1.

The Railroad mailed the notice of breach letter from Atlanta, Georgia on February 20, 2007.  Racko's Vice President Philip Shall asserts that on February 23, 2007, he received a notice from the U.S. Postal Service regarding a letter sent by certified mail for him to pick up.  (Rec. Doc. 49, Exh. 5).  To the best of his memory he did not retrieve the letter until February 26, 2007.  (Id.).  The Railroad contends that it never received the green postal receipt but it has submitted a tracking email from the postal service indicating that the notice was left at "New Orleans LA 70119" on February 23, 2007.  (Rec. Doc. 52, Exh. G).

The Court is persuaded that the thirty day cure period began to run *no earlier than* February 26, 2007, which is the date that Racko claims to have received the notice of breach letter.  The 2006 Amendment modified the notice provisions of the lease.  The Railroad elected to use certified mail return receipt requested as its delivery method for the breach notice but it did not send the notice to the Lawn Avenue address specifically stated in the lease.  Thus, the Railroad cannot avail itself of the three day

6

"deemed delivered" provision--a provision that is designed to avoid the very uncertainty regarding delivery that the parties now face.  Nothing in the lease supports the Railroad's contention that the cure period began to run upon mailing, and the "deemed delivered" provision in the Amendment would not be required if the parties' intent had been to allow the date of mailing to trigger the beginning of the thirty day cure period.  Moreover, the clear intent of the lease is to give the lessee a full thirty days to cure any violations.  Starting the cure period upon mailing would deprive the lessee of the full thirty days contemplated in the lease should the vagaries of the postal service cause unnecessary delay in delivery.

Further, because the Railroad did not comply with the notice requirement specified in the Amendment, arguably the actual receipt of the notice in New Orleans on February 26, 2007, was not sufficient to trigger the thirty day cure period provided in the lease.  It would therefore be inappropriate and somewhat inequitable to allow the Railroad to challenge the February 26, 2007, actual receipt date as the one triggering the running of the thirty day period.  Nevertheless, the Railroad cannot create an issue of fact as to the date of actual delivery.[1]  In sum, the

---

[1] The Railroad's only evidence on this issue is the tracking email from the postal service mentioned above.  The Court has

7

Court finds that the breach notice was received on February 26, 2007, and that this receipt triggered the start of the 30 day cure period. The lease gave Racko 30 days *after* written notice to cure any potential breaches. Accordingly, Racko had until March 28, 2007, to comply.

For purposes of Racko's LUTPA claim, the Railroad's termination letter is only potentially actionable if it was *received by the tenants* prior to the running of the full thirty day cure period. The Court is persuaded that the March 27, 2007, mailing date of the notice, upon which Racko places so much reliance, is not significant because the Railroad mailed the termination notice to Racko not to Racko's tenants.[2] Racko's LUTPA claim does not arise out of its own receipt of the termination notice but rather out of the tenants' receipt of the notice--the claim is based on an allegedly lost business opportunity that occurred when certain tenants received a copy of

---

reviewed that notice and contrary to the Railroad's contention it does not establish that the letter was delivered *to Racko* on the 23rd. The information in the email does not impugn Shall's contention that the letter was left at the post office for some unexplained reason. And the Railroad's contention that it never received the green receipt from the post office tends to corroborate the suggestion that the letter was not delivered as planned.

[2] If the letter had been mailed directly to Racko's tenants then the premature mailing would have been problematic even if the letter was received after the thirty days had run because once mailed the letter was irretrievable.

the termination letter which contained a "misrepresentation," i.e., that the lease was terminated.  As the Court appreciates the facts of the case, the Railroad entered the property on March 28th, *the thirtieth and final day of the cure period*, and delivered a copy of the termination letter to Racko's tenants.  However, the clear language of the lease gave Racko the benefit of a *full* thirty days to cure any violations.  The lease would therefore not be subject to termination until the thirty day cure period elapsed without Racko having remedied the alleged violations.  Therefore, the lease could not have terminated as of March 28, 2007, because that day was included in the thirty day cure period.  The Railroad's contention that another day would not have made a difference is unpersuasive.  The Railroad's arguments for terminating the lease are based on a very strict reading of its provisions and the notice and cure requirements are entitled to no less deference than the obligations imposed upon the lessee.

In sum, assuming that Racko did in fact breach the lease giving the Railroad grounds to terminate it, the termination was not confected as of March 28, 2007, when the Railroad delivered the termination notice to Racko's tenants.  Racko's motion for partial summary judgment with motion in limine on this issue is GRANTED.  Racko's argument that the lease did not terminate

because the Railroad continued to accept rent is moot.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment With Motion In Limine (Rec. Doc. 49)** filed by plaintiff Racko Properties, Inc. is **GRANTED**.

April 17, 2008

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE